

# Missouri Court of Appeals
## Western District

DR. ANNA FITZ-JAMES,           )
                            )   **WD86595**
           **Respondent,**   )
**v.**                       )   **OPINION FILED:**
                            )
**JOHN R. ASHCROFT, MISSOURI**   )   **October 31, 2023**
**SECRETARY OF STATE,**       )
                            )
           **Appellant.**    )

**Appeal from the Circuit Court of Cole County, Missouri
The Honorable Jon E. Beetem, Judge**

**Before Special Division: Lisa White Hardwick, Presiding Judge,
Edward R. Ardini, Jr., Judge, and Thomas N. Chapman, Judge**

John Ashcroft, the Missouri Secretary of State ("Secretary"), appeals the judgment of the Circuit Court of Cole County finding that the summary statements prepared by the Secretary for six initiative petitions were insufficient and unfair and redrafting the summary statements and certifying the new language. The judgment is affirmed in part and reversed in part. Alternative summary statements are certified to the Secretary.

## Background

On March 8, 2023, Dr. Anna Fitz-James submitted six initiative petitions and sample sheets to the Secretary of State. The initiative petitions seek to amend Article I of

the Missouri Constitution by adopting a new Section 36.  The six petitions are six versions of the proposed new Section 36 to be known as "The Right to Reproductive Freedom Initiative" and are denominated 2024-085, 2024-078, 2024-080, 2024-082, 2024-086, and 2024-087.[1]  All of the versions contain subsections 2 and 3 creating a state constitutional right to reproductive freedom:

> 2. The Government shall not deny or infringe upon a person's fundamental right to reproductive freedom, which is the right to make and carry out decisions about all matters relating to reproductive health care, including but not limited to prenatal care, childbirth, postpartum care, birth control, abortion care, miscarriage care, and respectful birthing conditions.
>
> 3. The right to reproductive freedom shall not be denied, interfered with, delayed, or otherwise restricted unless the Government demonstrates that such action is justified by a compelling governmental interest achieved by the least restrictive means.  Any denial, interference, delay, or restriction of the right to reproductive freedom shall be presumed invalid.  For purposes of this Section, a governmental interest is compelling only if it is for the limited purpose and has the limited effect of improving or maintaining the health of a person seeking care, is consistent with widely accepted clinical standards of practice and evidence-based medicine, and does not infringe on that person's autonomous decision-making.

All of the versions also contain a provision prohibiting the Government from penalizing, prosecuting, or subjecting to adverse action any person based on their pregnancy outcomes or because they assist a person in exercising their right to reproductive freedom.

All of the initiatives also contain the following provision (numbered differently in the various initiatives):

---

[1] See the Appendix for the full text of the proposed initiatives.

2

The Government shall not discriminate against persons providing or obtaining reproductive health care or assisting another person in doing so.

Five versions provide that "[n]otwithstanding subsection 3 of this Section, the general assembly may enact laws that regulate the provision of abortion" either after fetal viability (2024-085, 2024-086, and 2024-087) or after 24 weeks of gestation (2024-080 and 2024-082) except where a treating health care professional deems in their good faith judgment that an abortion is needed to protect the life or physical or mental health of the pregnant person. In the 24-week provisions (2024-080 and 2024-082), abortion also may not be restricted if it is of a nonviable pregnancy. "Fetal viability" is defined in the applicable versions as "the point in pregnancy when, in good faith judgment of a treating health care professional and based on the particular facts of the case, there is a significant likelihood of the fetus's sustained survival outside the uterus without the application of extraordinary medical measures."

Two versions of the proposed initiative permit the General Assembly to "enact laws that require a health care professional, before providing an abortion to a minor, obtain consent from a parent or guardian of the minor" with exceptions (2024-085 and 2024-080). Finally, two versions (2024-085 and 2024-087) provide, "Nothing in this Section requires government funding of abortion procedures."

On July 26, 2023, the Secretary of State certified the official ballot titles for the petitions. An official ballot title consists of a summary statement prepared by the Secretary of State and a fiscal note summary prepared by the State Auditor.

3

*Boeving v. Kander*, 493 S.W.3d 865, 871 (Mo. App. W.D. 2016). For initiative

petitions 2024-085, 2024-086, and 2024-087, the summary statements all read:

> Do you want the Missouri Constitution to:
> - allow for dangerous, unregulated, and unrestricted abortions, from conception to live birth, without requiring a medical license or potentially being subject to medical malpractice;
> - nullify longstanding Missouri law protecting the right to life, including but not limited to partial-birth abortion;
> - allow for laws to be enacted regulating abortion procedures after Fetal Viability, while guaranteeing the right of any woman, including a minor, to end the life of their unborn child at any time; and
> - require the government not to discriminate against persons providing or obtaining an abortion, potentially including tax-payer funding?

For initiative petitions 2024-080 and 2024-082, the summary statements both read:

> Do you want the Missouri Constitution to:
> - allow for dangerous, unregulated, and unrestricted abortions, from conception to live birth, without requiring a medical license or potentially being subject to medical malpractice;
> - nullify longstanding Missouri law protecting the right to life, including but not limited to partial-birth abortion;
> - allow for laws to be enacted regulating abortion procedures after 24 weeks, while guaranteeing the right of any woman, including a minor, to end the life of their unborn child at any time; and
> - require the government not to discriminate against persons providing or obtaining an abortion, potentially including tax-payer funding?

For initiative petition 2024-078, the summary statement reads:

> Do you want the Missouri Constitution to:
> - allow for dangerous, unregulated, and unrestricted abortions, from conception to live birth, without requiring a medical license or potentially being subject to medical malpractice;
> - nullify longstanding Missouri law protecting the right to life, including but not limited to partial-birth abortion;

4

- require the government not to discriminate against persons providing or obtaining an abortion, potentially including tax-payer funding; and
- prohibit any municipality, city, town, village, district, authority, public subdivision, or public corporation having the power to tax or regulate or the state of Missouri from regulating abortion procedures?

On May 27, 2023, Fitz-James filed six petitions in the Circuit Court of Cole County challenging the summary statements prepared by the Secretary of State. She alleged that the language of the statements is insufficient and unfair. The circuit court consolidated the six cases.

Following a bench trial on jointly stipulated facts and exhibits, the circuit court entered judgment on September 25, 2023. The circuit court found that certain phrases in the summary statements are either argumentative or do not fairly describe the purpose or probable effect of the initiatives. These phrases are: "dangerous, unregulated, and unrestricted abortions," "from conception to live birth," "without requiring a medical license," "without…potentially being subject to medical malpractice," "nullify longstanding Missouri law," "the right to life," "partial-birth abortion," "including a minor," "end the life," "unborn child," "at any time," "potentially including tax-payer funding," and "prohibit any municipality, city, town, village, district, authority, public subdivision, or public corporation having the power to tax or regulate or the state of Missouri from regulating abortion procedures." The circuit court further found that while the proposals will have the greatest immediate impact on abortion, the absence of any reference to reproductive health care beyond abortion is insufficient in that it would cause

5

a voter to believe that abortion is the only health care comprising the initiatives. Finally, it found that the phrasing "require the government not to discriminate" to describe that the initiatives would prohibit government discrimination would likely cause confusion and that such phrasing is ancillary and does not need to be included in the statements.

The circuit court entered judgment in favor of Fitz-James and redrafted the summary statements and certified the new language. For initiative 2024-085, the circuit court certified the following summary statement:

Do you want to amend the Missouri Constitution to:
- establish a right to make decisions about reproductive health care, including abortion and contraceptives, with any governmental interference of that right presumed invalid;
- remove Missouri's ban on abortion;
- allow regulation of reproductive health care to improve or maintain the health of the patient;
- allow abortion to be restricted or banned after Fetal Viability except to protect life or health of the woman;
- allow General Assembly to enact a parental consent requirement for abortion with an alternative authorization procedure; and
- declare government funding of abortion is not required?

For initiative 2024-086, the circuit court certified the same summary statement as in 2024-085 minus the parental consent and government funding bullet points.

For initiative 2024-087, the circuit court certified that same summary statement as in 2024-085 minus the parental consent bullet point.

For initiative 2024-082, the circuit court certified the following summary statement:

Do you want to amend the Missouri Constitution to:

6

- establish a right to make decisions about reproductive health care, including abortion and contraceptives, with any governmental interference of that right presumed invalid;
- remove Missouri's ban on abortion;
- allow regulation of reproductive health care to improve or maintain the health of the patient; and
- allow abortion to be restricted or banned after 24 weeks except to protect life or health of the woman?

For initiative 2024-080, the circuit court certified that same language as 2024-082 with an additional bullet point:

- allow General Assembly to enact a parental consent requirement for abortion with an alternative authorization procedure?

Finally, the circuit court certified the following summary statement for initiative 2024-078:

Do you want to amend the Missouri Constitution to:
- establish a right to make decisions about reproductive health care, including abortion and contraceptives, with any governmental interference of that right presumed invalid;
- remove Missouri's ban on abortion; and
- allow regulation of reproductive health care to improve or maintain the health of the patient;

This appeal by the Secretary of State followed.

**Standard of Review**

In this court-tried case, the judgment is affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Fitzpatrick v. Ashcroft*, 640 S.W.3d 110, 124-125 (Mo. App. W.D. 2022). Where, as here, the parties argue the fairness and sufficiency of the summary statement based on stipulated facts, joint exhibits, and undisputed facts, the only question

7

on appeal is whether the circuit court drew proper legal conclusions, which the appellate court reviews *de novo*. *Id.* at 125.

## Analysis

The Secretary raises seven points on appeal. In points one through six, he contends that the circuit court erred in finding that the summary statements do not satisfy statutory requirements, i.e. that they are insufficient or unfair in various ways. In point seven, the Secretary asserts that the circuit court erred in rewriting the summary statements in their entirety and that the new summary statements are themselves insufficient and unfair. For clarity and ease of reading, this opinion will address point six before addressing the remaining points.

After the approval of the form of an initiative petition, the Secretary of State must prepare a concise summary statement of the initiative that does not exceed 100 words. § 116.334.1[2]; *Sedey v. Ashcroft*, 594 S.W.3d 256, 262 (Mo. App. W.D. 2020). "This statement shall be in the form of a question using language neither intentionally argumentative nor likely to create prejudice either for or against the proposed measure." § 116.334.1.

"Secretary of state summary statements…are required by section 116.190.3 to be sufficient and fair…." *Brown v. Carnahan*, 370 S.W.3d 637, 653 (Mo. banc 2012). "[I]nsufficient means inadequate; especially lacking adequate power, capacity, or

---

[2] All statutory references are to RSMo 2016 unless otherwise indicated.

competence and unfair means to be marked by injustice, partiality, or deception." *Id.* at 653-54 (internal quotes and citation omitted). "To create a summary statement that is not insufficient or unfair, the summary statement must be adequate and state the consequences of the initiative without bias, prejudice, deception, or favoritism." *Id.* at 654. "The summary statement should accurately reflect both the legal and probable effects of the proposal." *Pippens v. Ashcroft*, 606 S.W.3d 689, 701 (Mo. App. W.D. 2020) (internal quotes and citations omitted). It should inform voters of the central features of the initiative proposal.[3] *Id.* But it "need not set out the details of the proposal to be fair and sufficient." *Id.* (internal quotes and citations omitted). The applicable question on a challenge to a summary statement is not whether the summary drafted is the best summary, "but whether it gives the voter a sufficient idea of what the proposed amendment would accomplish, without language that is intentionally unfair or misleading. The idea is to advise the citizen what the proposal is about." *Fitzpatrick*, 640 S.W.3d at 125 (internal quotes and citations omitted). "The question for the court is whether the summary statement contains an impartial, intelligible, and accurate summary of the ballot measure's central purpose and effects." *Pippens*, 606 S.W.3d at 702 (internal quotes and citation omitted).

---

[3] "This principle derives from the commonly understood meaning of a summary, namely, a short restatement of the main points (as of an argument) for easier remembering, for better understanding, or for showing the relation of the points." *Id.* (internal quotes and citations omitted).

Under section 116.190.3, the party challenging the summary statement's language bears the burden to show that the language is insufficient or unfair. *Id.* at 701. Because courts are called on to apply the open-ended standards of section 116.190.3 (whether a summary statement "is insufficient or unfair") to an endless variety of ballot measures and summary statements frequently on a sharply compressed timetable, each appellate decision in this area is inherently tied to the specific measures, the specific summary statements, and the specific circumstances presented in the particular case. *Id.* at 708.

"[W]hen courts are called upon to intervene in the initiative process, they must act with restraint, trepidation and a healthy suspicion of the partisan who would use the judiciary to prevent the initiative process from taking its course." *Brown*, 370 S.W.3d at 645 (internal quotes and citation omitted).

> To avoid encroachment on the people's constitutional authority, courts will not sit in judgment on the wisdom or folly of the initiative proposal presented, nor will this Court issue an advisory opinion as to whether a particular proposal, if adopted, would violate a superseding law of this state or the United States Constitution.

*Id.* "As such, when initiative petitions are challenged, this Court's primary duty is to determine 'whether the constitutional requirements and limits of power, as expressed in the provisions relating to the procedure and form of initiative petitions, have been regarded." *Id.* (internal quotes and citation omitted).

### Point Six

In point six, the Secretary contends that the circuit court erred in holding that the summary statements are insufficient and unfair for mentioning only abortion and not

10

topics like prenatal care. He asserts that the summary statements fairly and sufficiently summarize the initiatives because the summary statements needed only describe the initiatives' central feature, which is abortion.

The Secretary is correct that a summary statement should inform voters of the central features of the initiative proposal and need not set out the details of the proposal to be sufficient and fair. *Pippens*, 606 S.W.3d at 701-702. While the circuit court, in its judgment, expressly acknowledged that the initiatives "will have the greatest immediate impact on abortion,"[4] the proposed initiatives encompass more than abortion. On their face, the initiatives prohibit denial of or infringement upon the "fundamental right to reproductive freedom" defined as "the right to make and carry out decisions about all matters relating to reproductive health care, including but not limited to prenatal care, childbirth, postpartum care, birth control, abortion care, miscarriage care, and respectful birthing conditions." They further provide that "[t]he Government shall not discriminate against any person providing or obtaining reproductive health care or assisting another person in doing so." By definition, the proposed initiatives prohibit governmental interference with and discrimination based on all forms of reproductive health care, not just abortion. While the regulation of abortion is also specifically covered in the initiatives and is one of the central features of the initiatives, the right to make decisions about all reproductive health care without government infringement and the prohibition

---

[4] Fitz-James also acknowledged this during argument in the circuit court.

11

against government discrimination for providing or obtaining reproductive health care are also central features of them. Thus, inclusion of all reproductive health care, not just abortion, in the summary statements is necessary to give voters "a sufficient idea of what the proposed amendment[s] would accomplish." *Fitzpatrick*, 640 S.W.3d at 125 (internal quotes and citations omitted). The absence of any reference to a right to reproductive health care beyond abortion in the summary statements is misleading. *See Seay v. Jones*, 439 S.W.3d 881, 892 (Mo. App. W.D. 2014) (holding that omission of funding contingency for advance voting caused summary statement to be misleading). The singular focus on abortion in the Secretary's summary statements would lead voters to believe that abortion is the only topic addressed in the initiatives. That is not the effect of the proposed amendments. Because the Secretary's summary statements will mislead voters as to what the amendments would accomplish, they are insufficient. *See Pippens*, 606 S.W.3d at 707 (holding that reference to the elimination of the Nonpartisan State Demographer, a central feature to proposed amendment to create citizen-led independent bipartisan commissions to draw state legislative districts, was necessary for summary statement to be fair and sufficient to give voters a meaningful sense of what the proposed amendment would accomplish). The circuit court did not err in finding that the summary statements are insufficient and unfair for mentioning only abortion.

Point six is denied.

**Point One**

In the first point on appeal, the Secretary contends that the circuit court erred in holding that the summary statements are insufficient and unfair in their description of the limits the petitions would place on government action. All of the Secretary's summary statements provide that the initiatives would:

- allow for dangerous, unregulated, and unrestricted abortions, from conception to live birth, without requiring a medical license or potentially being subject to medical malpractice[.]

The Secretary argues that the bullet point fairly and sufficiently summarizes the initiatives because the initiatives would per se ban all actions that interfere with "autonomous decision-making" and presume "invalid" "any" other regulation that might "delay" abortion. The Secretary's bullet point does not accurately reflect the probable effect of the proposals.

All versions of the proposed initiative allow for regulation of abortion to some degree. Under initiative 2024-078, strict scrutiny would apply to the restriction of reproductive health care, including abortions, under subsection 3. Under that provision, any governmental denial, interference, delay, or restriction of the right to reproductive freedom (including abortion) shall be presumed invalid, but the presumption may be overcome by the government's demonstration that "such action is justified by a compelling governmental interest achieved by the least restrictive means."

The Secretary suggests that the application of the strict scrutiny standard to enforce the right to reproductive freedom would be fatal to any governmental action

13

regulating reproductive health care, particularly the regulation of abortion.  However, "that strict scrutiny applies says nothing about the ultimate validity of any particular law; that determination is the job of the court applying the standard."  *State v. Merritt*, 467 S.W.3d 808, 813-814 (Mo. banc 2015) (internal quotes and citations omitted).  "Courts routinely uphold laws when applying strict scrutiny, and they do so in every major area of law."  *Id.* at 814 (internal quote and citation omitted).  The strict scrutiny standard in the initiatives does not, itself, eliminate the government's authority to regulate abortions.

The Secretary also suggests that the limit on restrictions that infringe on autonomous decision-making eliminates all government authority to enact health and safety regulations.  Such suggestion ignores the rules of statutory construction and is not an accurate reading of the initiative.  Every word in a constitutional provision is presumed to have effect and meaning, and is not mere surplusage.  *State ex rel. Dep't of Health and Senior Servs. v. Slusher*, 638 S.W.3d 496, 498 (Mo. banc 2022); *Pearson v. Koster*, 367 S.W.3d 36, 48 (Mo. banc 2012).  Particular phrases cannot be read in isolation.  *Gash v. Lafayette Co.*, 245 S.W.3d 229, 232 (Mo. banc 2008).  Instead, the provisions of a constitutional amendment are "construed together and read in harmony" with the entire amendment.  *Id.* (internal quotes and citation omitted).  Subsection 3, therefore, must be considered in its entirety and with the entire initiative to ascertain its meaning and to give effect to every word used.  *See Pearson*, 367 S.W.3d at 48; *Gash*, 245 S.W.3d at 232.  According to the subsection, "a governmental interest is compelling only if it is for the limited purpose and has the limited effect of improving or maintaining

14

the health of the person seeking care, is consistent with widely accepted clinical standards of practice and evidence-based medicine, and does not infringe on that person's autonomous decision-making."  The initiatives define the right to reproductive freedom in subsection 2 as "the right to make and carry out decisions about all matters relating to reproductive health care."  The provision requiring any compelling governmental interest to "not infringe on [a] person's autonomous decision-making" is related to the right to make decisions about reproductive health care, not the right to carry out those decisions, which is made clear by the absence in subsection 3 of the phrase "and carry out decisions."  That is, while the subsection 2 delineating the right being created indicates that it is both a right to make and to carry out decisions, subsection 3 that generally addresses the government's ability to restrict the right defines compelling interest in a manner that places a limitation on the government's ability to infringe on autonomous decision-making, but does not reference the ability to carry out that decision.  As a whole, the initiative mandates that any governmental interest in restricting reproductive health care not interfere with a person's autonomy to make decisions about such health care while leaving open to restriction the ability to carry out the decisions for patient health or safety.  Thus, under subsection 3, while the government may not restrict a person's independent decision to obtain an abortion, it may impose health and safety regulation and require abortions be performed according to widely accepted medical standards.

The other five versions of the proposed amendment (2024-085, 2024-086, and 2024-087, 2024-080, and 2024-082) explicitly permit regulation of abortion after fetal

viability or 24 weeks notwithstanding subsection 3.  They all permit the General

Assembly to "enact laws that regulate the provision of abortion after" fetal viability or 24

weeks of gestation except where a treating health care professional deems in good faith

judgment that an abortion "is needed to protect the life or physical or mental health of the

pregnant person."  The 24-week versions also provide an exception to regulation of

abortion where an abortion "is of a nonviable pregnancy."  The "Notwithstanding" clause

indicates that subsection 3 cannot be held in conflict with the fetal viability or 24-week

provisions.  *See State ex. Rel. City of Jennings v. Riley*, 236 S.W.3d 630, 632 (Mo. banc

2007), *superseded by rule on other grounds as stated in State ex rel. Vacation Mgmt.

Sols., LLC*, 610 S.W.3d 700 (Mo. banc 2020) ("[T]o say that a statute applies

'notwithstanding any other provision of the law' is to say that no other provisions of law

can be held in conflict with it.").  In the event that subsection 3 were to conflict with the

provisions that operated notwithstanding subsection 3, the provisions with such a

notwithstanding clause would prevail over and operate "to the exclusion" of subsection 3.

*Id.* at 631-32.  Thus, after fetal viability or 24 weeks, the government could choose to

restrict or ban abortions with exceptions as well as to regulate any abortions necessary

under the exceptions without satisfying heightened scrutiny.  Because the fetal viability

and 24-week provisions are silent regarding regulation of abortion before those times,

strict scrutiny would apply pursuant to subsection 3, i.e. the government could not

infringe on the person's autonomous decision-making but could regulate abortions to

protect the health and safety of the patient.  The Secretary's claim that the initiatives

16

would "allow for dangerous, unregulated, and unrestricted abortions" does not "accurately reflect both the legal and probable effects of the proposal[s]." *Pippens*, 606 S.W.3d at 701 (internal quotes and citations omitted).

The Secretary further argues that all of the initiatives would permit abortion "from conception to live birth." The Secretary is correct that abortion would be permitted under 2024-078 without limitation on the timing of the abortion. As discussed above, strict scrutiny would apply to the restriction of reproductive health care, including abortions, under that initiative. Such standard provides, in part, that a governmental interest is compelling if it does not infringe on a person's autonomous decision-making. The initiative does not contain any other provision regarding the regulation of abortions. Thus, under the initiative, the government may not restrict a person's autonomous decision to obtain an abortion at any particular time. The Secretary's phrase "from conception to live birth," however, is not an impartial statement of the consequences of the initiative. Instead, specifying that the removal of the ban on abortions applies "at any stage of gestation" is necessary in the summary statement for initiative 2024-078 to inform voters, without bias or prejudice, of the probable effect of the proposal. *Pippens*, 606 S.W.3d at 701.

The Secretary also suggests that the life-and-health exceptions in the other five initiatives (2024-085, 2024-086, and 2024-087, 2024-080, and 2024-082) "swallow the rule" permitting abortion through all nine months of pregnancy. These initiatives allow the General Assembly to enact laws that regulate the provision of abortion after fetal

17

viability or 24 weeks "provided that under no circumstance shall the Government deny, burden, or restrict an abortion that in the good faith judgment of a treating health care professional is needed to protect the life or physical or mental health of the pregnant person." The Secretary argues that because pregnancy necessarily involves substantial changes to the body, a health care professional will always be able to certify that abortion would have some positive health effect under this exception. He gives an example that "simply asking a dermatologist to say that abortion might clear up acne would be a permission slip for abortion through all nine months of pregnancy." The argument that the life-and-health exception would swallow the rule again ignores the rules of statutory construction and is not an accurate reading of the initiatives. It would render meaningless the rest of the subsection permitting the General Assembly to regulate abortion after fetal viability or 24 weeks of gestation. *See Pearson*, 367 S.W.3d at 48 (every word in a constitutional provision is presumed to have effect and meaning). Furthermore, the Secretary's argument ignores that the initiatives require that abortion be "needed" to protect the life or health of the pregnant person. "Needed" means to "be necessary." *Need*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010). It also ignores that the health care professional's assessment of need must be made in good faith. Indeed, the good-faith-judgment requirement in the life-and-health exception of the initiatives is a comparable safeguard to the existing standard for determining whether a medical emergency necessitates an immediate abortion in section 188.015(7), RSMo Cum. Supp.

2020.[5]  In that statute, the assessment of a medical emergency must be "based on reasonable medical judgment."  That unrestricted abortion would be allowed during all nine months of pregnancy is not a probable effect of initiatives 2024-085, 2024-086, and 2024-087, 2024-080, and 2024-082.

Finally, nothing in the initiatives contemplates that abortions would be allowed "without requiring a medical license or potentially being subject to medical malpractice" as the Secretary's summary statements declare.  Section 188.080 requires a medical license to perform an abortion, and section 188.043 requires medical malpractice insurance to perform an abortion.[6]  As discussed above, such regulations would be allowed under the strict scrutiny standard for all abortions under initiative 2024-078 and abortions performed before fetal viability or 24 weeks under the other five initiatives provided the government could show they are needed to maintain the health and safety of the patient.  The Secretary provides no rationale for concluding that the state would be unable to meet this burden.  And after fetal viability or 24 weeks, subsection 3 of the

---

[5] "'Medical emergency', a condition which, based on reasonable medical judgment, so complicates the medical condition of a pregnant woman as to necessitate the immediate abortion of her pregnancy to avert the death of the pregnant woman or for which a delay will create a serious risk of substantial and irreversible physical impairment of a major bodily function of the pregnant woman[.]"

[6] Section 188.080 provides, in pertinent part, "Any person who is not a physician who performs or induces or attempts to perform or induce an abortion on another is guilty of a class B felony, and, upon conviction, shall be punished as provided by law."  Section 188.043.1, RSMo Cum. Supp. 2020, provides, "No person shall perform or induce an abortion on another unless such person has medical malpractice insurance with coverage amounts of at least one million dollars per occurrence and three million dollars in the annual aggregate."

19

initiatives does not limit the government's ability to regulate how abortions necessary under the exceptions are performed. All of the initiatives involve the right to make and carry out decisions relating to health care, which necessarily entails the involvement of a health care provider. Disallowing health and safety regulations—including requirements that physicians perform abortions and that they maintain medical malpractice insurance— is not a probable effect of the initiatives.

For all of these reasons discussed, the Secretary's description of the initiatives as allowing "dangerous, unregulated, and unrestricted abortions, from conception to live birth, without requiring a medical license or potentially being subject to medical malpractice" is inaccurate and does not give voters "a sufficient idea what the proposed amendment[s] would accomplish." *Fitzpatrick*, 640 S.W.3d at 125 (internal quotes and citations omitted). The circuit court did not err in holding that the bullet point is insufficient and unfair. Therefore, point one is denied.

However, the circuit court did err in failing to include language in the summary statement for initiative 2024-078 that indicated that the initiative would "[r]emove Missouri's ban on abortion *at any stage of gestation.*"

**Point Two**

In his second point on appeal, the Secretary contends that the circuit court erred in holding that the summary statements are insufficient and unfair in their description of the effect of the petitions on existing law. All of the Secretary's summary statements provide that the initiative would:

- nullify longstanding Missouri law protecting the right to life, including but not limited to partial-birth abortion[.]

The Secretary argues that the bullet point fairly and sufficiently summarizes the initiatives because the initiatives are designed to overturn Missouri's abortion laws, including restrictions that have been on the books for 200 years.

The circuit court did not err in determining that the Secretary's language in this bullet point is not fair and sufficient. First, "right to life" is a partisan political phrase in the same manner that "right to choose" is a partisan political phrase. The language used in a summary statement should "fairly and impartially summarize the purposes of the measure so that voters will not be deceived or misled." *Brown*, 370 S.W.3d at 654 (internal quotes and citations omitted). The use of the term "right to life" is simply not an impartial term. For example, if the bullet point had stated that the provision would "nullify longstanding Missouri law preventing the right to choose[,]" such language would clearly be partisan and objectionable. The same is true of the converse phrasing employed by the Secretary. The circuit court did not err in concluding that the phrase "right to life" is not fair and sufficient.

Furthermore, the use of the phrase "nullify longstanding Missouri law" is, at the very least, unduly vague, if not misleading. The phrase suggests that an entire body of law that had long existed without change would be struck down upon passage of the initiatives. The Secretary argues that Missouri has long had a policy against abortion and that Missouri has long had laws on the books banning abortion. However, the Secretary

21

also concedes that "Missouri was prohibited from enforcing its ban against abortion while *Roe v. Wade* was on the books." In 2022, *Roe v. Wade*, 410 U.S. 113 (1973) was overruled by *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228, 2284 (2022). *Roe v. Wade* had been overruled for approximately a year at the time the Secretary certified the language in the summary statements at issue in this appeal. Moreover, many of the central provisions of Missouri's current abortion statutes were enacted only in 2019. *See* H.B. 126, 100th Gen. Assembly, 1st Reg. Sess., 2019 MO. LAWS 272 (codified in scattered sections of Chapter 188, RSMo). The Secretary's language indicates that Missouri law regarding abortions has been longstanding, even though many of the relevant statutes are of recent vintage, and, as the Secretary concedes, Missouri was effectively prohibited from enforcing its abortion laws from 1973 until 2022.[7]

Next, the phrase "partial birth abortion" in the Secretary's summary statements is argumentative, prejudicial, and misleading. Like "right to life," "partial birth abortion" is a politically-charged phrase that partisan political groups have used to label certain types of medical procedures. The phrase carries no fixed definition, as evidenced by the distinctions between the conduct criminalized in Missouri's infanticide law and the conduct prohibited by a federal law governing "partial-birth abortions." *Compare* §

---

[7] While the various initiatives, if adopted as constitutional amendments, could very well again render some statutes ineffective, none of the initiatives expressly state that they would nullify any specific existing Missouri statutes.

565.300, RSMo *with* 18 U.S.C. § 1531. It is not a neutral description of the purpose or probable effect of the initiatives, which do not focus on specific types of procedures, but instead focus on the right created and when and the extent to which it can be regulated. Furthermore, as discussed in point one, five of the initiatives allow the General Assembly broad power in regulating abortions after fetal viability or 24 weeks, and each of the initiatives provides a more limited power to regulate prior to those times. Finally, the federal statute criminalizing certain conduct related to abortion procedures labeled as "partial birth-abortions," 18 U.S.C. § 1531, would not be affected by the passage of any of the initiatives. *See Johnson v. State*, 366 S.W.3d 11, 26-27 (Mo. banc 2012) ("Under the Supremacy Clause, state laws and constitutional provisions are preempted and have no effect to the extent they conflict with federal laws." (internal quotes and citation omitted)). Thus, it is not a probable effect of the initiatives that procedures labeled partial-birth abortions by Congress would be allowed in Missouri.

The circuit court did not err in holding that the bullet point is insufficient and unfair.

Point two is denied.

### Point Three

In the third point on appeal, the Secretary contends that the circuit court erred in holding that the summary statements are insufficient and unfair in their description of the limited authority the petitions would allow the legislature to retain for abortions after 24

weeks or fetal viability. Five of the summary statements (2024-80, 2024-082, 2024-085, 2024-086, and 2024-087) provide that the initiative would:

- allow for laws to be enacted regulating abortion procedures [after 24 weeks/after Fetal Viability], while guaranteeing the right of any woman, including a minor, to end the life of their unborn child at any time[.]

The Secretary argues that the bullet point fairly and sufficiently summarizes the petitions because the petitions include exceptions so capacious as to remove nearly all authority from the legislature.

The Secretary first asserts that the phrase "while guaranteeing the right…to end the life of their unborn child at any time" is not insufficient or unfair. As he did in point one, he again argues that the exception for the life or health of the pregnant person in the fetal viability and 24-week provisions of these initiatives swallows any rule that would ordinarily allow the legislature to regulate late-term abortions. As discussed in point one, the Secretary's interpretation of the exception ignores the rules of statutory construction and is not an accurate reading of the initiatives. Every word in a constitutional provision has effect and meaning, and is not mere surplusage. *Slusher*, 638 S.W.3d at 498; *Pearson*, 367 S.W.3d at 48. The Secretary's argument seems to be that the purpose and probable effect of the proposed amendments are found in their narrow exception rather than in the broad regulatory authority conferred. The Secretary's apparent interpretation is that the regulatory authority conferred to the General Assembly after fetal viability or 24 weeks of gestation is meaningless and surplusage because of the medical exception. *Id.* The Secretary's apparent interpretation fails to address the purpose or probable effect

24

of such regulatory provisions. It also ignores the initiatives' requirements that abortion be "needed" to protect the life or health of the pregnant person and that the health care professional's assessment of need must be made in good faith. The phrase "while guaranteeing the right…to end the life of their unborn child at any time" does not accurately describe the fetal-viability and 24-week provisions of the five initiatives.

The Secretary makes a similar argument regarding the language about minors. Two initiatives (2024-085 and 2024-080) permit the General Assembly to "enact laws that require a health care professional, before providing an abortion to a minor, obtain consent from a parent or guardian of the minor" with exceptions. Abortion may be provided without such consent if, in the good faith judgment of the health care professional, (1) obtaining consent may lead to physical or emotional harm to the minor; (2) the minor is mature and capable of consenting to an abortion; or (3) obtaining consent would not be in the best interest of the minor. The Secretary summarily argues that the phrase "including a minor" in the bullet point was sufficient and fair because the exceptions for parental consent are so capacious as to vitiate any meaningful legislative authority. The Secretary's argument again would render meaningless the rest of the subsection permitting the General Assembly to enact laws requiring health care professionals to obtain parental consent before providing an abortion to a minor. *See Id*. It also ignores the requirement that the health care professionals must act in good faith. The language about minors does not accurately describe the two initiatives with the parental consent provisions. And because the other three initiatives (2024-082, 2024-086,

25

and 2024-087) do not contain the parental consent provision or any other language about minors, inclusion of the phrase "including minors" in their summary statements is not accurate. The Secretary's phrase "while guaranteeing the right of any woman, including a minor, to end the life of their unborn child at any time" in the bullet point does not accurately reflect the legal and probable effects of the five proposals. *Pippens*, 606 S.W.3d at 701. The circuit court did not err in finding it insufficient and unfair.

Point three is denied.

### Point Four

In point four, the Secretary contends that the circuit court erred in holding that the summary statements were insufficient and unfair in their description about discrimination and taxpayer funding. All six of the Secretary's summary statements provided that the initiative would:

- require the government not to discriminate against persons providing or obtaining an abortion, potentially including tax-payer funding[.]

The Secretary asserts that the initial language in the bullet point ("require the government not to discriminate against persons providing or obtaining an abortion") fairly and sufficiently summarizes the initiatives because the initiatives themselves include very similar language. The Secretary also asserts that Fitz-James conceded that four of the initiatives could require taxpayer funding of abortion, such that the bullet point's remaining language ("potentially including tax-payer funding") is also fair and sufficient.

26

The circuit court found that the bullet point did not need to be included in the summary statements because its phrasing "require the government not to discriminate" would likely cause confusion. The circuit court also found that the nondiscrimination provision in the initiatives is ancillary such that its inclusion in the summary statements is not warranted.

All six of the initiatives contain a non-discrimination provision: "The Government shall not discriminate against persons providing or obtaining reproductive health care or assisting another person in doing so." But for its singular focus on abortion, the first clause of the bullet point drafted by the Secretary is strikingly similar to the non-discrimination provision that is contained in the proposed amendments. The language in the first clause of the Secretary's proposed bullet point is not likely to cause confusion.

As discussed in point six above, the prohibition against discrimination for providing or obtaining reproductive health care is a central feature of the initiatives. The provision must be given effect and meaning; it is not mere surplusage. *Slusher*, 638 S.W.3d at 498; *Pearson*, 367 S.W.3d at 48. While the Secretary's focus on abortion alone in the bullet point is misleading and inaccurate, as discussed above, inclusion of a bullet point addressing the prohibition on government discrimination against persons for providing or obtaining reproductive health care is necessary to give voters "a sufficient idea of what the proposed amendment[s] would accomplish[.]" *Fitzpatrick*, 640 S.W.3d at 125 (internal quotes and citations omitted). The first clause of the Secretary's bullet point ("require the government not to discriminate against persons providing or obtaining an

27

abortion") is sufficient and fair except for its focus on abortion alone and not reproductive health care. A sufficient and fair bullet point requires "reproductive health care" to be substituted for "an abortion" in summary statements for all of the initiatives so that the summary statements make clear that the nondiscrimination clause applies to all the topics included in the amendments under the label reproductive health care, not just abortion.

The Secretary also argues that the remainder of his bullet point, particularly the phrase "potentially including tax-payer funding" is sufficient and fair. Fitz-James conceded at trial that the nondiscrimination provision in four of the initiatives (2024-078, 2024-080, 2024-082, and 2024-086) would render section 188.205 susceptible to challenge. Section 188.205 provides, "It shall be unlawful for any public funds to be expended for the purpose of performing or assisting an abortion, not necessary to save the life of the mother, or for the purpose of encouraging or counseling a woman to have an abortion not necessary to save her life." Fitz-James admitted that "[t]he result of [the four initiatives] would be that current statute [188.205], which forbids funds for abortion, could be challenged[.]"[8] Furthermore, the nondiscrimination provision is a feature of the

---

[8] Fitz-James's full argument at trial regarding taxpayer funding was as follows:

> Turning to taxpayer funding for reproductive healthcare. Right now the constitution is silent. Some versions [2024-085 and 2024-087] would explicitly allow the General Assembly to refuse to fund abortions, something that is not in the constitution now, immediately leaving things the way they are but foreclosing [as] a matter of law that the amendment could be interpreted as requiring taxpayer money for abortions. The others [2024-078, 2024-080, 2024-082, and 2024-086] say nothing, just let the constitution now, which would retain the status quo that existed, exists now and existed before Dobbs, whether to fund abortions is a matter left to the discretion of a legislature without saying

28

initiatives that is separate and apart from subsections 2 and 3, which create a right to make and carry out decisions about reproductive health care and prohibit the government from unduly interfering with that right with certain exceptions.  The probable effect of subsections 2 and 3 is to limit the government's policing power to restrict or regulate reproductive health care, including abortions.  But the government has other functions in addition to its police power.  The government also provides services and funding.  A probable effect of the nondiscrimination clause is to prevent the government, when carrying out its function of providing services and funding, from discriminating against persons based on their reproductive choices.  While a person's right to reproductive freedom would not require the government to fund the right, *Harris v. McRae*, 448 U.S. 297, 316-381 (1980), if the government does choose to provide services and funding for reproductive health care, the nondiscrimination provision could impact how it expends its resources.  Describing the expenditure of government resources as "tax-payer funding" is not, however, entirely impartial; moreover, it is misleading by referring to government *funding*, without referencing other government programs and activities.  A more neutral phrase providing that the government cannot discriminate "in government programs,

---

one way or another.  The result of that would be that current statute, which forbids funds for abortion, could be challenged but it would remain in effect until it was successfully challenged.  None of the proposals take a third route and require taxpayer funding of abortion.

29

funding, and other activities" is impartial and is necessary to inform voters of the legal and probable effects of the four proposals. *Pippens*, 606 S.W.3d at 701.[9]

The circuit court erred in its refusal to certify language that addressed the nondiscrimination provisions in each of the initiatives. However, the Secretary's singular focus on abortion in addressing the nondiscrimination provisions is, as previously noted, misleading.

Point four is granted in part.

**Point Five**

In point five, the Secretary contends that the circuit court erred in holding that Secretary's summary statement of initiative petition 2024-078 is insufficient and unfair in its description of the effect it would have on local government. The following bullet point is included in the summary statement addressing initiative petition 2024-078:

- prohibit any municipality, city, town, village, district, authority, public subdivision, or public corporation having the power to tax or regulate or the state of Missouri from regulating abortion procedures?

The Secretary argues that the bullet point fairly and sufficiently summarizes the initiative because the initiative presumes all restrictions invalid.

---

[9] Due to constraints on word count, the summaries we certify in two of the proposals (2024-085 and 2024-087) are truncated, and state that said initiatives "prohibit government discrimination against persons providing or obtaining reproductive health care."

30

The Secretary repeats his argument from point one that the initiative would invalidate per se any law that interferes with autonomous decision-making thereby eliminating all government authority, including local governments, to regulate abortions. As discussed above, such suggestion ignores the rules of statutory construction and is not an accurate reading of the initiative. When reading initiative 2024-078 as a whole, the initiative mandates that any governmental interest in restricting reproductive health care not interfere with a person's autonomy to make decisions about such health care but permits restriction on the ability to carry out the decisions for patient health or safety. In other words, while the government, including local governments, may not restrict a person's independent decision to obtain an abortion at any time under 2024-078, it may regulate abortions (and other reproductive health care) to further the person's health and to require abortions (and other reproductive health care) to be performed according to widely accepted medical standards. The Secretary's bullet point does not accurately reflect the legal and probable effects of initiative petition 2024-078. *Pippens*, 606 S.W.3d at 701. The circuit court did not err in finding that the bullet point is insufficient and unfair.

Point five is denied.

## Point Seven

Finally, in point seven, the Secretary contends that the circuit court erred in rewriting the summary statements in their entirety. He argues that the circuit court should have addressed any perceived insufficiencies by making the smallest changes possible

31

within the existing language and that it exceeded its authority and appropriate judicial role to engage in a complete rewrite of the summary statements. The Secretary also contends that the circuit court's substitute language is itself both insufficient and unfair.

This point is multifarious in that it asserts error regarding the circuit court's authority to rewrite the summary statements, and it also asserts numerous unrelated errors with various language utilized in the summary statements that the circuit court certified. These are distinct allegations of error, yet are grouped into a single point on appeal. *See Mo. Bankers Ass'n, Inc. v. St. Louis Co.*, 448 S.W.3d 267, 271 n.5 (Mo. banc 2014) ("A point relied on violates Rule 84.04(d) when it groups together multiple contentions not related to a single issue and is subject to dismissal."). We exercise our discretion to address the merits of the Secretary's arguments to the extent that we have not previously addressed such arguments in a prior point on appeal. *See Id.* ("[W]hen possible, this Court's policy is to decide a case on its merits rather than on technical deficiencies in the brief.") (internal quotes and citation omitted)).

The Secretary first argues that the circuit court lacked authority to rewrite the Secretary's summary statements. The Secretary seems to suggest that he has full authority to write a summary statement in the manner he deems fit because the legislature tasked the Secretary with preparing summary statements. However, there are legal requirements that govern the Secretary of State's summary statement, and there are checks on the Secretary's ability to deviate from those requirements.

32

The Secretary of State is tasked with preparing an initial summary statement for the official ballot title of a proposed constitutional amendment originating through the initiative petition process. § 116.334.1. In drafting a summary statement, the Secretary must use language that is "neither intentionally argumentative nor likely to create prejudice either for or against the proposed measure." *Id.* Any citizen who wishes to challenge the official ballot title for a proposed constitutional amendment "may bring an action in the circuit court of Cole County" within ten days of the Secretary of State's certification. § 116.190.1. If the citizen is challenging the summary statement of the ballot title, the petition "shall state the reason or reasons why the summary statement portion of the official ballot title is insufficient or unfair and shall request a different summary statement portion of the official ballot title." § 116.190.3. "Insofar as the action challenges the summary statement portion of the official ballot title, the court shall consider the petition, hear arguments, and in its decision certify the summary statement portion of the official ballot title to the secretary of state." § 116.190.4. Any party to the suit may appeal. *Id.* Section 116.190.4 goes on to provide that "[i]n making the legal notice to election authorities under section 116.240, and for the purposes of section 116.180, the secretary of state shall certify the language which the court certifies to him." Thus, the law governing challenges to a summary statement makes clear that the legislature intended for the circuit court to have authority to reject the Secretary's summary statements to the extent that the statements are not fair and sufficient, to

33

consider alternative language, and to certify a different summary statement than the one initially prepared by the Secretary.

It is true that Missouri courts have regularly cautioned restraint in the modification of summary statements and have indicated that modifications should be made in the most limited fashion possible. *See Pippens*, 606 S.W.3d at 713; *see also Cures Without Cloning v. Pund*, 259 S.W.3d 76, 83 (Mo. App. W.D. 2008). In *Pund*, our court indicated that a circuit court was not authorized to rewrite an entire summary statement because one word of the summary statement was found not to be fair and sufficient. *Pund*, 259 S.W.3d at 83. However, our court in *Pund* also made clear that the circuit court is authorized to correct any language that was unfair or insufficient. *Id.* at 82. This understanding of the circuit court's authority in *Pund* is consistent with section 116.190, which makes clear that the circuit court is authorized to rewrite any language of the summary statement that is not fair and sufficient. Thus, if the circuit court correctly concludes that all of the language is not fair and sufficient, then the circuit court is authorized to rewrite the entire summary statement. § 116.190. However, as in *Pund*, if only one word is not fair and sufficient, then the circuit court has no authority to rewrite the summary statement but only to correct the aspect of the language that rendered it unfair or insufficient. *Pund*, 259 S.W.3d at 83 (circuit court not authorized to rewrite entire summary statement because it found that one word was not fair and sufficient).

As discussed in the points above, the Secretary's summary statements do not fairly describe the purposes and probable effects of the initiatives. The Secretary's summary

34

statements are replete with politically partisan language. After removal of the inaccurate and partisan language of the Secretary's summary statements, the circuit court was left with largely unworkable summary statements. The circuit court was authorized to write alternative language to fulfill its responsibility that a fair and sufficient summary statement be certified. This result is clearly contemplated by the statute in the event that the Secretary fails to provide a workable framework for a summary statement with fair and sufficient language. Although the circuit court erred in some limited respects in its revisions of the summary statements (as discussed in points one and four above), it did not exceed its authority in drafting new summary statements. [10]

Next, the Secretary contends that the circuit court's newly crafted summary statements are partial and misleading. The Secretary first takes issue with the circuit court's language that the initiatives would remove Missouri's ban on abortion. The Secretary argues that this language is inaccurate because Missouri does not have a ban on abortion, but only a ban on elective abortion. This argument is puzzling, given that the Secretary argued earlier in point two that Missouri did have a ban on abortion. The Secretary previously argued that "Missouri was prohibited from enforcing its ban against abortion while *Roe v. Wade* was on the books." Given the fact that the Secretary's brief

---

[10] As discussed in point one above, the circuit court did err in failing to include in its summary of Initiative 2024-078, that the initiative would repeal Missouri's ban on abortion "at any stage of gestation." As discussed in point four above, the circuit court also erred in failing to include language in each of the summaries that addresses the nondiscrimination provision included in all of the initiatives.

itself refers to Missouri having a ban on abortion, the argument that it is misleading for the summary statement to refer to the proposed amendments as removing Missouri's ban on abortion is without merit.

The Secretary next challenges the absence of any reference to partial-birth abortion in the summary statements certified by the circuit court. He also challenges three bullet points crafted by the circuit court: "allow regulation of reproductive health care to improve or maintain the health of the patient," "allow abortion to be restricted or banned after [Fetal Viability/24 weeks] except to protect the life or health of the woman," and "allow General Assembly to enact a parental consent requirement for abortion with an alternative authorization procedure." The Secretary repeats the same arguments made in points one, two, and three regarding the circuit court's findings that his summary statements are insufficient and unfair. It is unnecessary to address these arguments again.

The Secretary then argues that the summary statements certified by the circuit court included language that is not impartial. The only language that the Secretary identifies as partial is the circuit court's use of the term "reproductive health care." He argues that "reproductive health care" is a partisan euphemism for abortion that will mislead voters into believing that the initiatives are primarily about something other than abortion. All of the summary statements certified by the circuit court, however, use both the phrase "reproductive health care" and the term "abortion." They use the term "reproductive health care" in articulating the purpose and probable effect of the initiatives to create and safeguard a right while using the term "abortion" to explain that certain

36

parts of the initiatives relate to abortion alone such as the authorization of abortion regulation after fetal viability or 24 weeks and the parental consent provision. The summary statements make clear that the phrase "reproductive health care" includes abortion. As discussed in point six, if only the term "abortion" were used, the voter would have no notice that any other topics were at issue in the initiatives. However, multiple topics—including ones that may also be controversial (such as contraceptives)—are also addressed in the proposed amendments, such that "reproductive health care" is not being used as a euphemism for abortion, but instead an umbrella under which multiple topics are included. The circuit court's language makes clear that abortion is one such topic as well as contraceptives, while leaving it to the voter to decide whether to look into the matter further as to what other topics might fall under the phrase "reproductive health care." Thus, the circuit court's usage of the term "reproductive health care" is not a euphemism for abortion but a signal that other topics are addressed in the initiatives. Except for the omissions we have previously noted, the circuit court's summary statements are not insufficient, and are not otherwise unfair.

Finally, the Secretary argues that remand to the circuit court is necessary because the circuit court's judgment did not sufficiently explain its reasoning. Rule 78.07(c) provides: "In all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." The record indicates that the Secretary did not file a motion to amend the judgment and therefore

37

failed to preserve for appellate review any allegation of error relating to the form or language of the judgment. Aside from the fact that he failed to preserve any argument regarding the form of the circuit court's judgment, the Secretary fails to provide any legal support whatsoever for the proposition that the judgment was deficient in any way. He fails to identify any aspect of section 116.190 with which the trial court did not comply, fails to identify any procedural rules that were violated, and fails to present any case law suggesting error in the form of the trial court's judgment.

Point seven is denied in part, in that the circuit court did not exceed its authority in revising the Secretary's summaries. However, the circuit court did err in excluding any language addressing the nondiscrimination provision in each initiative, and did err in failing to include a provision in initiative 2024-078 providing that the initiative would remove Missouri's ban on abortion "at any stage of gestation."

### Certified Summary Statements

As discussed above, section 116.190.4 authorizes the circuit court to certify alternative language to the Secretary of State where it finds the existing summary statement language to be deficient. *Pippens*, 606 S.W.3d at 713; *Boeving*, 493 S.W.3d at 882. Additionally, where the appellate court concludes that the summary statement is insufficient or unfair, it steps into the circuit court's shoes by virtue of Rule 84.14, and may certify alternative language to the Secretary of State. *Id.*

In certifying alternative language to the Secretary of State, we find that the summary statements drafted by the circuit court are sufficient and fair except as discussed

38

in points one and four above. The following summary statements are therefore certified

to the Secretary of State for inclusion in the official ballot titles for the initiatives

petitions.

For Initiative 2024-085:

Do you want to amend the Missouri Constitution to:
- establish a right to make decisions about reproductive health care, including abortion and contraceptives, with any governmental interference presumed invalid;
- remove Missouri's ban on abortion;
- allow regulation of reproductive health care to improve or maintain health of patient;
- prohibit government discrimination against persons providing or obtaining reproductive health care;
- allow abortion to be restricted or banned after Fetal Viability except to protect life or health of the woman;
- allow General Assembly to enact parental consent requirements for abortions involving minors, with exceptions; and
- declare government funding of abortion is not required?

For Initiative 2024-086:

Do you want to amend the Missouri Constitution to:
- establish a right to make decisions about reproductive health care, including abortion and contraceptives, with any governmental interference of that right presumed invalid;
- remove Missouri's ban on abortion;
- allow regulation of reproductive health care to improve or maintain the health of the patient;
- require the government not to discriminate, in government programs, funding, and other activities, against persons providing or obtaining reproductive health care; and
- allow abortion to be restricted or banned after Fetal Viability except to protect the life or health of the woman?

For Initiative 2024-087:

Do you want to amend the Missouri Constitution to:

- establish a right to make decisions about reproductive health care, including abortion and contraceptives, with any governmental interference of that right presumed invalid;
- remove Missouri's ban on abortion;
- allow regulation of reproductive health care to improve or maintain the health of the patient;
- prohibit government discrimination against persons providing or obtaining reproductive health care;
- allow abortion to be restricted or banned after Fetal Viability except to protect the life or health of the woman; and
- declare government funding of abortion is not required?

For Initiative 2024-080:

Do you want to amend the Missouri Constitution to:

- establish a right to make decisions about reproductive health care, including abortion and contraceptives, with any governmental interference presumed invalid;
- remove Missouri's ban on abortion;
- allow regulation of reproductive health care to improve or maintain health of the patient;
- prohibit government discrimination, in government programs, funding, and other activities, against persons providing or obtaining reproductive health care;
- allow abortion to be restricted or banned after 24 weeks except to protect life or health of the woman; and
- allow General Assembly to enact parental consent requirements for abortions involving minors, with exceptions?

For Initiative 2024-082:

Do you want to amend the Missouri Constitution to:

- establish a right to make decisions about reproductive health care, including abortion and contraceptives, with any governmental interference of that right presumed invalid;
- remove Missouri's ban on abortion;
- allow regulation of reproductive health care to improve or maintain the health of the patient;

- require the government not to discriminate, in government programs, funding, and other activities, against persons providing or obtaining reproductive health care; and
- allow abortion to be restricted or banned after 24 weeks except to protect the life or health of the woman?

For Initiative 2024-078:

Do you want to amend the Missouri Constitution to:
- establish a right to make decisions about reproductive health care, including abortion and contraceptives, with any governmental interference of that right presumed invalid;
- remove Missouri's ban on abortion at any stage of gestation;
- allow regulation of reproductive health care to improve or maintain the health of the patient; and
- require the government not to discriminate, in government programs, funding, and other activities, against persons providing or obtaining reproductive health care?

## Conclusion

The circuit court's judgment is affirmed in part and reversed in part. Alternative summary statements are certified to the Secretary of State.

_____
Thomas N. Chapman, Judge

All concur.

Appendix

The following is the full text of the proposed new amendment, Section 36, as set out in all of the various initiatives, in the order they are first addressed in the opinion.

2024-085
Section 36. 1. This Section shall be known as "The Right to Reproductive Freedom Initiative."

41

2. The Government shall not deny or infringe upon a person's fundamental right to reproductive freedom, which is the right to make and carry out decisions about all matters relating to reproductive health care, including but limited to prenatal care, childbirth, postpartum care, birth control, abortion care, miscarriage care, and respectful birthing conditions.

3. The right to reproductive freedom shall not be denied, interfered with, delayed, or otherwise restricted unless the Government demonstrates that such action is justified by a compelling governmental interest achieved by the least restrictive means. Any denial, interference, delay, or restriction of the right to reproductive freedom shall be presumed invalid. For purposes of this Section, a governmental interest is compelling only if it is for the limited purpose and has the limited effect of improving or maintaining the health of a person seeking care, is consistent with widely accepted clinical standards of practice and evidence-based medicine, and does not infringe on that person's autonomous decision-making.

4. Notwithstanding subsection 3 of this Section, the general assembly may enact laws that regulate the provision of abortion after Fetal Viability provided that under no circumstance shall the Government deny, burden, or restrict an abortion that in the good faith judgment of a treating health care professional is needed to protect the life or physical or mental health of the pregnant person.

5. No person shall be penalized, prosecuted, or otherwise subjected to adverse action based on their actual, potential, perceived, or alleged pregnancy outcomes, including but not limited to miscarriage, stillbirth, or abortion. Nor shall any person assisting a person in exercising their right to reproductive freedom with that person's consent be penalized, prosecuted, or otherwise subjected to adverse action for doing so.

6. Notwithstanding this Section, the general assembly may enact laws that require a health care professional, before providing an abortion to a minor, obtain consent from a parent or guardian of the minor, provided that such law shall permit the health care professional to provide the abortion without such consent if, in the good faith judgment of a health care professional:

(1) obtaining consent may lead to physical or emotional harm to the minor;

(2) the minor is mature and capable of consenting to an abortion; or

(3) obtaining consent would not be in the best interest of the minor.

7. The Government shall not discriminate against persons providing or obtaining reproductive health care or assisting another person in doing so.

8. Nothing in this Section requires government funding of abortion procedures.

9. If any provision of this Section or the application thereof to anyone or to any circumstance is held invalid, the remainder of those provisions and the application of such provisions to others or other circumstances shall not be affected thereby.

10. For purposes of this Section, the following terms mean:

(1) "Fetal Viability", the point in pregnancy when, in the good faith judgment of a treating health care professional and based on the particular facts of the case, there is a significant likelihood of the fetus's sustained survival outside the uterus without the application of extraordinary medical measures.

(2) "Government",

a. the state of Missouri; or

b. any municipality, city, town, village, township, district, authority, public subdivision or public corporation having the power to tax or regulate, or any portion of two or more such entities within the state of Missouri.

2024-086
Section 36. 1. This Section shall be known as "The Right to Reproductive Freedom Initiative."

2. The Government shall not deny or infringe upon a person's fundamental right to reproductive freedom, which is the right to make and carry out decisions about all matters relating to reproductive health care, including but limited to prenatal care, childbirth, postpartum care, birth control, abortion care, miscarriage care, and respectful birthing conditions.

3. The right to reproductive freedom shall not be denied, interfered with, delayed, or otherwise restricted unless the Government demonstrates that such action is justified by a compelling governmental interest achieved by the least restrictive means. Any denial, interference, delay, or restriction of the right to reproductive freedom shall be presumed invalid. For purposes of this Section, a governmental interest is compelling only if it is for the limited purpose and has the limited effect of improving or maintaining the health

of a person seeking care, is consistent with widely accepted clinical standards of practice and evidence-based medicine, and does not infringe on that person's autonomous decision-making.

4. Notwithstanding subsection 3 of this Section, the general assembly may enact laws that regulate the provision of abortion after Fetal Viability provided that under no circumstance shall the Government deny, interfere with, delay, or otherwise restrict an abortion that in the good faith judgment of a treating health care professional is needed to protect the life or physical or mental health of the pregnant person.

5. No person shall be penalized, prosecuted, or otherwise subjected to adverse action based on their actual, potential, perceived, or alleged pregnancy outcomes, including but not limited to miscarriage, stillbirth, or abortion. Nor shall any person assisting a person in exercising their right to reproductive freedom with that person's consent be penalized, prosecuted, or otherwise subjected to adverse action for doing so.

6. The Government shall not discriminate against persons providing or obtaining reproductive health care or assisting another person in doing so.

7. If any provision of this Section or the application thereof to anyone or to any circumstance is held invalid, the remainder of those provisions and the application of such provisions to others or other circumstances shall not be affected thereby.

8. For purposes of this Section, the following terms mean:

(1) "Fetal Viability", the point in pregnancy when, in the good faith judgment of a treating health care professional and based on the particular facts of the case, there is a significant likelihood of the fetus's sustained survival outside the uterus without the application of extraordinary medical measures.

(2) "Government",

a. the state of Missouri; or

b. any municipality, city, town, village, township, district, authority, public subdivision or public corporation having the power to tax or regulate, or any portion of two or more such entities within the state of Missouri.

2024-087
Section 36. 1. This Section shall be known as "The Right to Reproductive Freedom Initiative."

2. The Government shall not deny or infringe upon a person's fundamental right to reproductive freedom, which is the right to make and carry out decisions about all matters relating to reproductive health care, including but limited to prenatal care, childbirth, postpartum care, birth control, abortion care, miscarriage care, and respectful birthing conditions.

3. The right to reproductive freedom shall not be denied, interfered with, delayed, or otherwise restricted unless the Government demonstrates that such action is justified by a compelling governmental interest achieved by the least restrictive means. Any denial, interference, delay, or restriction of the right to reproductive freedom shall be presumed invalid. For purposes of this Section, a governmental interest is compelling only if it is for the limited purpose and has the limited effect of improving or maintaining the health of a person seeking care, is consistent with widely accepted clinical standards of practice and evidence-based medicine, and does not infringe on that person's autonomous decision-making.

4. Notwithstanding subsection 3 of this Section, the general assembly may enact laws that regulate the provision of abortion after Fetal Viability provided that under no circumstance shall the Government deny, interfere with, delay, or otherwise restrict an abortion that in the good faith judgment of a treating health care professional is needed to protect the life or physical or mental health of the pregnant person.

5. No person shall be penalized, prosecuted, or otherwise subjected to adverse action based on their actual, potential, perceived, or alleged pregnancy outcomes, including but not limited to miscarriage, stillbirth, or abortion. Nor shall any person assisting a person in exercising their right to reproductive freedom with that person's consent be penalized, prosecuted, or otherwise subjected to adverse action for doing so.

6. The Government shall not discriminate against persons providing or obtaining reproductive health care or assisting another person in doing so.

7. Nothing in this Section requires government funding of abortion procedures.

8. If any provision of this Section or the application thereof to anyone or to any circumstance is held invalid, the remainder of those provisions and the application of such provisions to others or other circumstances shall not be affected thereby.

45

9. For purposes of this Section, the following terms mean:

(1) "Fetal Viability", the point in pregnancy when, in the good faith judgment of a treating health care professional and based on the particular facts of the case, there is a significant likelihood of the fetus's sustained survival outside the uterus without the application of extraordinary medical measures.

(2) "Government",

a. the state of Missouri; or

b. any municipality, city, town, village, township, district, authority, public subdivision or public corporation having the power to tax or regulate, or any portion of two or more such entities within the state of Missouri.

2024-080
Section 36. 1. This Section shall be known as "The Right to Reproductive Freedom Initiative."

2. The Government shall not deny or infringe upon a person's fundamental right to reproductive freedom, which is the right to make and carry out decisions about all matters relating to reproductive health care, including but limited to prenatal care, childbirth, postpartum care, birth control, abortion care, miscarriage care, and respectful birthing conditions.

3. The right to reproductive freedom shall not be denied, interfered with, delayed, or otherwise restricted unless the Government demonstrates that such action is justified by a compelling governmental interest achieved by the least restrictive means. Any denial, interference, delay, or restriction of the right to reproductive freedom shall be presumed invalid. For purposes of this Section, a governmental interest is compelling only if it is for the limited purpose and has the limited effect of improving or maintaining the health of a person seeking care, is consistent with widely accepted clinical standards of practice and evidence-based medicine, and does not infringe on that person's autonomous decision-making.

4. Notwithstanding subsection 3 of this Section, the general assembly may enact laws that regulate the provision of abortion after 24 weeks of gestation, as measured from the first day of the patient's last menstrual period consistent with accepted clinical standards, provided that under no circumstance shall the Government deny, burden, or otherwise restrict an abortion that in the good faith judgment of a treating health care professional is

needed to protect the life or physical or mental health of the pregnant person or is of a nonviable pregnancy.

5. No person shall be penalized, prosecuted, or otherwise subjected to adverse action based on their actual, potential, perceived, or alleged pregnancy outcomes, including but not limited to miscarriage, stillbirth, or abortion.  Nor shall any person assisting a person in exercising their right to reproductive freedom with that person's consent be penalized, prosecuted, or otherwise subjected to adverse action for doing so.

6. Notwithstanding this Section, the general assembly may enact laws that require a health care professional, before providing an abortion to a minor, obtain consent from a parent or guardian of the minor, provided that such law shall permit the health care professional to provide the abortion without such consent if, in the good faith judgment of a health care professional:

(1) obtaining consent may lead to physical or emotional harm to the minor;

(2) the minor is mature and capable of consenting to an abortion; or

(3) obtaining consent would not be in the best interest of the minor.

7. The Government shall not discriminate against persons providing or obtaining reproductive health care or assisting another person in doing so.

8. If any provision of this Section or the application thereof to anyone or to any circumstance is held invalid, the remainder of those provisions and the application of such provisions to others or other circumstances shall not be affected thereby.

9. For purposes of this Section, the term "Government" means:

(1) the state of Missouri; or

(2) any municipality, city, town, village, township, district, authority, public subdivision or public corporation having the power to tax or regulate, or any portion of two or more such entities within the state of Missouri.

2024-082
Section 36. 1. This Section shall be known as "The Right to Reproductive Freedom Initiative."

2. The Government shall not deny or infringe upon a person's fundamental right to reproductive freedom, which is the right to make and carry out decisions about all matters relating to reproductive health care, including but limited to prenatal care, childbirth, postpartum care, birth control, abortion care, miscarriage care, and respectful birthing conditions.

3. The right to reproductive freedom shall not be denied, interfered with, delayed, or otherwise restricted unless the Government demonstrates that such action is justified by a compelling governmental interest achieved by the least restrictive means. Any denial, interference, delay, or restriction of the right to reproductive freedom shall be presumed invalid. For purposes of this Section, a governmental interest is compelling only if it is for the limited purpose and has the limited effect of improving or maintaining the health of a person seeking care, is consistent with widely accepted clinical standards of practice and evidence-based medicine, and does not infringe on that person's autonomous decision-making.

4. Notwithstanding subsection 3 of this Section, the general assembly may enact laws that regulate the provision of abortion after 24 weeks of gestation, as measured from the first day of the patient's last menstrual period consistent with accepted clinical standards, provided that under no circumstance shall the Government deny, interfere with, delay, or otherwise restrict an abortion that in the good faith judgment of a treating health care professional is needed to protect the life or physical or mental health of the pregnant person or is of a nonviable pregnancy.

5. No person shall be penalized, prosecuted, or otherwise subjected to adverse action based on their actual, potential, perceived, or alleged pregnancy outcomes, including but not limited to miscarriage, stillbirth, or abortion. Nor shall any person assisting a person in exercising their right to reproductive freedom with that person's consent be penalized, prosecuted, or otherwise subjected to adverse action for doing so.

6. The Government shall not discriminate against persons providing or obtaining reproductive health care or assisting another person in doing so.

7. If any provision of this Section or the application thereof to anyone or to any circumstances is held invalid, the remainder of those provisions and the application of such provisions to others or other circumstances shall not be affected thereby.

8. For purposes of this Section, the term "Government" means:

(1) the state of Missouri; or

(2) any municipality, city, town, village, township, district, authority, public subdivision or public corporation having the power to tax or regulate, or any portion of two or more such entities within the state of Missouri.

2024-078
Section 36. 1. This Section shall be known as "The Right to Reproductive Freedom Initiative."

2. The Government shall not deny or infringe upon a person's fundamental right to reproductive freedom, which is the right to make and carry out decisions about all matters relating to reproductive health care, including but limited to prenatal care, childbirth, postpartum care, birth control, abortion care, miscarriage care, and respectful birthing conditions.

3. The right to reproductive freedom shall not be denied, interfered with, delayed, or otherwise restricted unless the Government demonstrates that such action is justified by a compelling governmental interest achieved by the least restrictive means. Any denial, interference, delay, or restriction of the right to reproductive freedom shall be presumed invalid. For purposes of this Section, a governmental interest is compelling only if it is for the limited purpose and has the limited effect of improving or maintaining the health of a person seeking care, is consistent with widely accepted clinical standards of practice and evidence-based medicine, and does not infringe on that person's autonomous decision-making.

4. No person shall be penalized, prosecuted, or otherwise subjected to adverse action based on their actual, potential, perceived, or alleged pregnancy outcomes, including but not limited to miscarriage, stillbirth, or abortion. Nor shall any person assisting a person in exercising their right to reproductive freedom with that person's consent be penalized, prosecuted, or otherwise subjected to adverse action for doing so.

5. The Government shall not discriminate against persons providing or obtaining reproductive health care or assisting another person in doing so.

6. If any provision of this Section or the application thereof to anyone or to any circumstance is held invalid, the remainder of those provisions and the application of such provisions to others or other circumstances shall not be affected thereby.

7. For purposes of this Section, the term "Government" means:

(1) the state of Missouri; or

(2) any municipality, city, town, village, township, district, authority, public subdivision or public corporation having the power to tax or regulate, or any portion of two or more such entities within the state of Missouri.